IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

PHASUNG LU BACCAM                                                                                        PLAINTIFF

          v.                                      Civil No. 11-5025

SHERIFF KEITH FERGUSON,
Benton County, Arkansas; CAPTAIN
HOLLY; and CAPTAIN HUNTER
PETRAY                                                                                                   DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This case is brought under the provisions of 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA). Plaintiff proceeds *pro se* and *in forma pauperis*. The claims at issue in this case arose during Plaintiff's incarceration in the Benton County Detention Center (BCDC).

Plaintiff maintains he was subjected to an unsafe environment and discriminated against on the basis of his disability while confined to the BCDC. Specifically, he maintains Defendants violated his rights by failing to provide a handicap accessible shower. Defendants have filed a motion for summary judgment (Doc. 74). Plaintiff has responded (Doc. 95) and the motion is now ready for determination.

**1. Background**

Plaintiff was incarcerated at the BCDC from September 23, 2010, until March 9, 2011, when he was released to federal custody. Plaintiff's Response (Doc. 95)(hereinafter Resp.) at ¶ 1(A). He was being held for violation of his federal probation and because of a new criminal charge. Id. at ¶ 1(B).

Plaintiff had polio as a child. Resp. at ¶ 3(A). As a result, he has what he refers to as "weak legs." Id. at ¶ 3(B). Prior to his incarceration at the BCDC, Plaintiff used a wheelchair, cane, or crutches only when he was wearing a leg brace. Id. at ¶ 3(C).

During his incarceration at the BCDC, he generally took a shower every three days. Resp. at ¶ 4(A). On occasion, Plaintiff states there was a longer period of time between showers. Id.

Because of the condition of his legs, Plaintiff indicated that he had to hold onto the shower door with one hand and push the shower button with the other hand. Resp. at ¶ 4(B). He had to continually hold the shower button. Id. at ¶ 4(C). Plaintiff maintains it was dangerous to hold onto the shower door. Id. at ¶ 4(B).

The shower in the holding tank did have a handrail but did not have a built in seat. Resp. at ¶ 4(D) & ¶ 4(E). Plaintiff maintains that the lack of a built in seat made taking a shower dangerous. Id.

Plaintiff submitted his first grievance about the problems he was having standing up in the shower on January 5, 2011. Resp. at ¶ 5(A). Although, he states that he had previously talked to Deputy Kelly about the fact that he almost fell in the shower, this was his first written grievance. Id. at ¶ 5(F). In the January 5th grievance, Plaintiff asked to see a doctor or be moved to booking so he would have better access to the shower. Id. at ¶ 5(B). The shower there had hand rails. Id. at ¶ 5(C). However, Plaintiff maintains the hand rail made the situation harder. Id. He was moved to booking but there was no shower seat. Id. at ¶ 5(E).

Plaintiff submitted his next grievance on January 16th. Resp. at ¶ 6(A). He indicated he had been approved by the doctor to use a shower chair. Id. at ¶ 6(B). When he asked for a chair one was obtained out of the control room. Id. However, Plaintiff states that he was sometimes forced to wait until the next shift or longer for a chair. Id. As a result, Plaintiff alleges it was sometimes four or five days between his showers. Id. at ¶ 6(D).

AO72A
(Rev. 8/82)

Plaintiff filed this lawsuit on January 26, 2011. Resp. at ¶ 6(F). On February 2nd, Plaintiff filed another grievance. Id. at ¶ 7(A). Plaintiff states that he asked Deputy Sykes for a shower chair and was told he would receive one. Id. at ¶ 7(B). However, Deputy Sykes also remarked that he had gotten a chair for Plaintiff two days ago. Id. at ¶ 7(C). When Plaintiff did not receive a chair during Deputy Sykes' shift, he asked Deputy Siler for a shower chair and was told he had to verify that Plaintiff was allowed a chair. Id. at ¶ 7(D). According to Plaintiff, he was not provided with a shower chair until five days later. Id. at ¶ 7(E).

According to Defendants, Jail Administrator Robert Holly had Plaintiff moved to a smaller pod, B-180, because he believed Plaintiff would receive his shower chair more promptly. Defendants' Exhibit 2 at pg. 2. Plaintiff asserts that he never communicated with Captain Holly. Resp. at ¶ 7(F).

On February 16th, Plaintiff submitted another grievance stating he was having problems in getting a shower chair. Resp. at ¶ 8(A). He indicated he requested a chair on February 11th and 12th, but was not provided with one until February 16th. Id. at ¶ 8(B). He asked why a shower chair could not be installed to make it more convenient. Id. at ¶ 8(C). In response, Defendants maintain that Captain Holly asked the maintenance director to install a permanent fold-down chair in the B-180 shower. Defts' Ex. 2 at pg. 2. Defendants indicate the chair was installed on March 2nd. Id. Plaintiff states he was not aware of any chair having been installed while he was at the BCDC. Id. at ¶ 8(D) & (E).

Plaintiff never spoke with Sheriff Ferguson about his need for a handicap accessible shower. Resp. at ¶ 9(A). However, he did communicate with Lieutenant Carter, who informed Plaintiff that he would let the sheriff know about the problem. Id.

Plaintiff never communicated with Captain Holly or Captain Petray about his need for a handicap accessible shower. Resp. at ¶¶ 9(B) & (C). Plaintiff maintains the BCDC policy is unconstitutional because it does not comply with the ADA. Id. at ¶ 10. He maintains no shower, in any pod he was housed in, had a shower seat. Id.

Plaintiff was asked what type of relief or damages he was seeking in this lawsuit. Resp. at ¶ 12. He responded: "I do not seek any relief or damage. I am seeking the Benton County Jail make access for all inmates who has medical need, not to ignore the policy and procedure under Federal guideline." Id.

**2. Applicable Standard**

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." National Bank of Commerce v. Dow Chemical Co., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." National Bank, 165 F.3d at 607 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). "A case founded on speculation or

-4-

AO72A
(Rev. 8/82)

suspicion is insufficient to survive a motion for summary judgment." Id. (citing, Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3. Discussion

Defendants have now moved for summary judgment on a number of grounds. First, they argue that since Plaintiff is seeking only declaratory and injunctive relief, that his claims are moot. Second, they maintain Plaintiff, even if he sought compensatory damages, would not be allowed to recover such damages because of the provisions of the Prison Litigation Reform Act. Third, they assert that there is no basis of liability for Sheriff Ferguson or Captain Petray. Fourth, they argue there is simply no constitutional or statutory violation. Fifth, they maintain they are entitled to judgment in their favor on the official capacity claims as there is no basis on which Benton County can be held liable. Finally, they argue the Defendants are entitled to qualified immunity. For the reasons set forth below, I need only address Defendants' first argument.

Plaintiff has made clear that he seeks only injunctive relief in this case. Resp. ¶ 12. "A claim for equitable relief is moot 'absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again.'" Randolph v. Rodgers, 170 F.3d 850, 856 n.7 (8th Cir. 1999)(quoting City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983)). Thus, as Defendants correctly point out, claims for injunctive and declaratory relief to improve prison conditions are moot when the inmate is released or moved to another facility and no longer subject to those conditions. Smith v. Hundley, 190 F.3d 852, 855 (8th Cir. 1999). "The exception to the mootness doctrine for claims capable of repetition yet evading review is not applicable, because [Plaintiff] made no showing" re-incarceration in the BCDC is likely. Zajrael v. Harmon, 677 F.3d 353, 355 (8th Cir.

AO72A
(Rev. 8/82)

2012)(citations omitted). In fact, Plaintiff is no longer incarcerated and is no longer a resident of the State of Arkansas; instead, he lives in the State of Texas. Plaintiff's claims for declaratory and injunctive relief are moot.

### 4. Conclusion

For the reasons stated, I recommend that the summary judgment motion (Doc. 74) be granted and the case dismissed with prejudice.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 24th day of October 2013.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE